OPINION
Domenico S. Evans, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas for aggravated burglary, a violation of R.C.2911.11, and felonious assault, a violation of R.C. 2903.11. We affirm.
On September 15, 1998, Officer Gary Thompson of the Columbus Police Department responded to a 911 call concerning an alleged assault. Officer Thompson testified that he arrived at an apartment and "found an older female who came to the door. She had a very large knot on her head * * * and she was bleeding and had blood on her clothing and [was] upset." The victim told him that she had been attacked and described her attacker. She also stated that her son knew the attacker, and that she thought his name was "Dee." Officer Thompson also described the state of the victim's apartment:
 The screen door looked like it had been busted off the hinges. There was blood on the floor, entryway, and on the carpet. I believe there was an ashtray laying on the ground that had been busted, and I saw a hammer laying in the left corner of the room.
During appellant's trial, the victim testified that around 1:15 A.M. the following events occurred:
 Well, the doorbell rang, and I go to the door, and it's this guy here, Dee. And he asked for my son, and I said he wasn't there, and he told me I was a Goddamn liar, that he was there * * *. And he was trying to look * * * across my shoulder, trying to look into the house, and I said, "Well, you can look and see he's not there."
I had a hammer. I always have a hammer behind the door. And he spots the hammer, and he yanks the door open and grabs the hammer. And he hits me and throws me back into the closet that's right by the front door. And then he grabs me, and he throws me out onto the porch, which I live upstairs, so it's kind of a small area. And he just kept * * * hitting me and even told me he was going to kick my ass and beat my ass until he got his money because my son owed him some money. * * * Then he threw the hammer back into the house, and he took off.
The victim testified that shortly after the police left her apartment, she received a phone call from the attacker. She stated that he again demanded to know if her son was at the apartment. The victim contacted the police and told them that the attacker had called. She also told them where they could find him because she had caller identification service on her phone. She stated that she recognized the phone number as the number of a pay phone located only a few blocks from her apartment.
Officer Jeff Vance was dispatched to the pay phone location to look for the alleged attacker. Officer Vance testified that approximately one block north of the pay phone, he saw appellant and "yelled out, `Hey, Dee!'" at which time appellant turned around and said, "Yeah? What's going on?" Officer Vance also stated that he told appellant that they wanted to talk to him because he "fit the description of a suspect we're looking for, [and I] asked him to stand there with us." Officer Thompson drove the victim from her apartment to where appellant had been detained. The victim positively identified appellant as being her attacker and appellant was arrested.
In June 1999, appellant was tried by a jury for aggravated burglary and felonious assault. The state presented evidence from the testimony of the victim and Officers Thompson and Vance. The state also introduced photographs of the victim shortly after she had been attacked and photographs of her apartment. The state also presented a photograph of the victim's caller identification display box. The display box showed that the victim had received a phone call at 2:38 A.M. on September 15 from a number that matched the number at the pay phone close to where Officer Vance found appellant. The jury found appellant guilty of aggravated burglary and felonious assault. The trial court journalized the jury's verdict on July 23, 1999. Appellant appeals his convictions and presents the following four assignments of error:
 I. The trial court erred when it denied the appellant's motion to dismiss the aggravated burglary charge because the prosecution failed to present sufficient evidence to establish all the essential elements of the offense and the guilty verdict is against the manifest weight of the evidence.
 II. The trial court erred when it refused to permit the appellant to call his witness because the appellant failed to timely disclose the name of the witness to the prosecution and violated the appellant's Sixth Amendment right to present witnesses in his favor.
 III. The trial court erred when it refused the appellant's request for a mistrial after the prosecutor violated her obligation to timely disclose evidence pursuant to Crim.R. 16 and misrepresented her intentions concerning the use of the information at trial.
 IV. The prosecution denied the appellant his rights to a fair trial and due process by engaging in prosecutorial misconduct during his trial.
Appellant argues in his first assignment of error that insufficient evidence was presented to support the jury's finding that he was guilty of aggravated burglary. Appellant also argues that his aggravated burglary conviction was against the manifest weight of the evidence.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998), 523 U.S. 1125, 118 S.Ct. 1811, following State v. Thompkins (1997), 78 Ohio St.3d 380, 387. "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1998), 525 U.S. 1077, 119 S.Ct. 816, followingJackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781 andState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." Clemons at 444.
R.C. 2911.11(A) states:
No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
In the present case, appellant claims that insufficient evidence was presented to show that he violated R.C. 2911.11(A) because the evidence does not show: (1) that appellant trespassed, and (2) that appellant trespassed with an intent to commit a criminal offense.
"[T]respass is an essential element of aggravated burglary." State v. O'Neal (2000), 87 Ohio St.3d 402, 408. Criminal trespass is defined by R.C. 2911.21, which states in part: "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another." R.C. 2911.21(A). In the present case, the victim testified that appellant first knocked her into her closet doors located in the entryway of her apartment. When questioned, the victim agreed with the statement that appellant "came into the apartment and grabbed [her] and took [her] out." The victim also testified that appellant "stepped one foot inside the door * * * because he had to drag me outside." The victim further testified that appellant did not have permission to enter her apartment. Based upon this evidence, we find that sufficient evidence was presented to show that appellant trespassed.
"For purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." State v. Fontes (2000), 87 Ohio St.3d 527, syllabus. In the present case, the victim testified that appellant grabbed her, threw her onto the porch, and hit her repeatedly. This is sufficient evidence to demonstrate that he entered the victim's apartment "with purpose to commit in the structure" a criminal offense: to assault and/or attempt to assault the victim. See R.C. 2903.13.
The victim also testified that appellant hit her with a hammer he had taken from her. R.C. 2923.11(A) defines a deadly weapon to be "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." A hammer used to hit someone in the head has been found to be a deadly weapon pursuant to R.C. 2923.11(A). State v. Cousins (Aug. 14, 1991), Ross App. No. 1735, unreported. Therefore, we find that sufficient evidence was presented to show that appellant had "a deadly weapon * * * on or about the offender's person or under the offender's control" pursuant to R.C. 2911.11(A)(2). Accordingly, after having reviewed the evidence in a light most favorable to the state, we find that sufficient evidence was presented to support appellant's conviction for aggravated burglary.
Appellant also argues that his convictions are against the manifest weight of the evidence. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported, following Clemons, at 444. In order for a court of appeals to reverse the judgment of a trial court, on the basis that the jury's verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Thompkins, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), ___ U.S. ___, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's convictions were against the manifest weight of the evidence. See Smith, at 114. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the trial court erred when it refused to allow his counsel to call Monica Taylor as a witness. The prosecution objected to Taylor being called as a witness because appellant's counsel disclosed his intent to call Taylor as a witness after appellant's trial had already begun.
While arguing before the trial court concerning why Monica Taylor should be allowed to testify, appellant's counsel stated the following:
 Monica Taylor is a friend of [the victim's son], who has been in the [victim's home], and knows that [the victim] consumed alcohol daily and that she smoked crack cocaine as recently as October of 1998 when she was in the home and saw her son give her crack cocaine.
 My reason for calling her is — goes to [the victim's] credibility. She testified that she had stopped smoking crack cocaine as of June of 1998. This young lady has been in her home with her subsequent to that date around the time of this event and knows that this person consumed alcohol and crack cocaine pretty regularly. And that's the extent of her testimony.
 I was not aware of this witness until today. I immediately filed the document and gave notice to the * * * prosecution. * * * She's not an alibi witness, but I think it does go to the credibility of the victim in this case.
"Reviewing courts should be slow to interfere with a court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced thereby." Reinoehl v. TrinityUniversal Ins. Co. (1998), 130 Ohio App.3d 186, 194. Evid.R. 608(B) states in part: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence." The Ohio Supreme Court has stated the following concerning the purpose of Evid.R. 608(B):
 [I]t is apparent that specific instances of conduct, relating only to the credibility of a witness, may not be established by extrinsic evidence. If this were not the rule, trials could potentially become bogged down in an interminable parade of witnesses called to testify as to specific instances of conduct of a prior witness in an attempt to contradict the prior witness' testimony on a purely collateral matter. State v. Leuin (1984), 11 Ohio St.3d 172, 174.
 Based upon the reason stated by appellant's trial counsel, that he intended to call Taylor as a witness in order to impeach the credibility of the victim with specific instances of conduct, we find that the trial court did not abuse its discretion in not allowing Taylor to testify. Appellant's second assignment of error is overruled.
Appellant contends in his third assignment of error that the trial court erred when it overruled appellant's request for a mistrial. Appellant claims that a mistrial should have been declared because the prosecution failed to provide a videotape of appellant being interviewed by the police the night he was arrested.
Pursuant to Crim.R. 16(B)(1)(a), the court upon a motion of a defendant, shall order the prosecuting attorney to permit the defendant to "inspect and copy or photograph" any relevant written or recorded statements made by the defendant or copies thereof which are "available to, or within the possession, custody, or control of the state." The Ohio Supreme Court has stated the following concerning Crim.R. 16:
 The philosophy of the Criminal Rules is to remove from a trial the element of gamesmanship. The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party. A sanction should not be imposed under Crim.R. 16 unless the prosecutor's noncompliance is of sufficient significance to result in a denial of defendant's right to a fair trial. State v. Parker (1990), 53 Ohio St.3d 82, 86. (Citations omitted.)
In the present case, appellant filed a Crim.R. 16(A) request for disclosure of evidence on March 23, 1999. On June 2, 1999, the first day of appellant's trial, appellant's counsel received a videotape of appellant being interviewed by Detective Michael P. Higgins of the Columbus Police Department. The interview occurred shortly after appellant had been arrested on September 15, 1998. In the videotape, appellant claimed that he did not attack the victim but, instead, contends that he saved the victim from an attack by a group of individuals. Appellant's counsel was aware of most of the information on the videotape because counsel had received a written summary of the videotape. The prosecution stated that the reason why they had not given appellant a copy of the videotape prior to that day was because they had just received the videotape that morning from police. The prosecution also stated that they had requested the videotape even though the police claimed the videotape was of poor quality.
Appellant's counsel viewed the videotape between the first and second days of appellant's trial. During the second day of trial, the prosecution questioned Detective Higgins about his interview with appellant. Detective Higgins stated that the interview was videotaped but the "video [was] very grainy, poor quality at best. The audio is — you can hear what's being said without too much difficulty." Detective Higgins was then questioned about appellant's demeanor and what he said during the interview. Neither party submitted the videotape to be viewed by the jury as evidence.
Detective Higgins also stated that during the interview, appellant gave him some names and phone numbers of individuals who could corroborate his story that he was aiding the victim. At this point, appellant's counsel moved for a mistrial claiming that the prosecution had failed to disclose this information during discovery. After a lengthy sidebar, the trial judge stated that "I don't think there's any surprise with respect to the altercation and the information relating to the altercation." The judge then recessed the trial from June 3 until June 7 in order to allow appellant's counsel "an opportunity to talk to your client, to talk to any possible witnesses as to whether or not they can verify that [appellant] was on Long Street and broke up an altercation and saved the victim." The judge also stated that "if it turns out the information that you learn over the weekend is such that we need to have a curative instruction as it relates to this whole thing, I'm willing to formulate a curative instruction * * *." At the conclusion of the state's presentation of the evidence, appellant rested his case.
A review of the videotape shows that it should have been provided to appellant's counsel before appellant's trial pursuant to Evid.R. 16(B). However, taking into consideration: (1) the information appellant's counsel had before appellant's trial concerning appellant's version of what occurred September 15, 1998; (2) the opportunity appellant's counsel had to investigate the new information learned from the videotape; and (3) all other evidence presented during appellant's trial, we find that any noncompliance by the prosecutor pursuant to Evid.R. 16(B), is not of sufficient significance to result in a denial of appellant's right to a fair trial. Appellant cannot show that he was so prejudiced that he was denied his right to a fair trial. Appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error that the prosecutor engaged in prosecutorial misconduct because she argued during closing arguments that appellant changed his story concerning the incident even though appellant never testified. Appellant claims that this "constituted an impermissible comment on his failure to testify thereby depriving him of his constitutional rights and a fair trial."
"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."State v. Smith (1984), 14 Ohio St.3d 13, 14. Prosecutors are given wide latitude in closing arguments, and the closing argument must be viewed in its entirety to determine if appellant was prejudiced. State v. Lester (1998), 126 Ohio App.3d 1, 8. We also note that appellant's counsel did not object and "failure to object to alleged improper statements made by a prosecutor during closing arguments waives all but plain error." Id.
In the present case, a review of the transcript shows that the prosecution never commented on the fact that appellant did not testify during the trial. The prosecutor did comment on appellant's statements made to Detective Higgins and on the opening statement by appellant's counsel who stated: "[a]nd I think you're going to see who the aggressor was in this and that my client, [appellant], defended himself, that he reacted, that he never entered the premises of [the victim], he never entered her home, that they had an altercation, and he left."
Appellant's statement to Detective Higgins and the defense strategy of appellant's counsel are not compatible, and it would be unreasonable to not allow the prosecution to comment on this incompatibility when it concerns the central issue of whether appellant assaulted the victim. Additionally, a prosecutor's comments regarding a defendant's theory of innocence as presented during opening statements and the failure of the defendant to provide evidence to support the theory, does not violate the defendant's constitutional rights. State v. Farley (Nov. 2, 1998), Clermont App. No. CA98-01-004, unreported. Accordingly, we find that the above comments by the prosecution were not improper. Appellant's fourth assignment of error is overruled.
Appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BRYANT and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.